# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION

| | |
|---|---|
| **GEOTAG, INC.,** | |
| **v.** | **2:10-cv-00569** |
| **GEORGIO ARMANI S.P.A.;** *et al.*, | |

| | |
|---|---|
| **GEOTAG, INC.,** | |
| **v.** | **2:10-cv-00570** |
| **AROMATIQUE, INC.;** *et al.*, | |

| | |
|---|---|
| **GEOTAG, INC.,** | |
| **v.** | **2:10-cv-00571** |
| **GUCCI AMERICA, INC.;** *et al.*, | |

| | |
|---|---|
| **GEOTAG, INC.,** | |
| **v.** | **2:10-cv-00572** |
| **STARBUCKS CORP.;** *et al.*, | |

| | |
|---|---|
| **GEOTAG, INC.,** | |
| **v.** | **2:10-cv-00573** |
| **RENT-A-CENTER, INC.;** *et al.*, | |

| | |
|---|---|
| **GEOTAG, INC.,** | |
| **v.** | **2:10-cv-00574** |
| **THE WESTERN UNION COMPANY;** *et al.*, | |

| | |
|---|---|
| **GEOTAG, INC.,**<br><br>v.<br><br>**ROYAL PURPLE, INC.;** *et al.*, | **2:10-cv-00575** |
| **GEOTAG, INC.,**<br><br>v.<br><br>**YAKIRA, L.L.C.;** *et al.*, | **2:10-cv-00587** |
| **GEOTAG, INC.,**<br><br>v.<br><br>**WHERE 2 GET IT, INC.;** *et al.*, | **2:11-cv-00175** |

## <u>MOVING DEFENDANTS' JOINT MOTION TO STAY</u>

The moving defendants ("Movants")[1] jointly move to stay the present patent infringement actions pending the resolution of declaratory judgment actions that presently are being adjudicated in the District of Delaware by the real parties in interest concerning the same patent and issues here.  The Delaware litigations involve key technology providers Google Inc., Microsoft Corp., and Where 2 Get It, Inc.; whereas the nine Texas actions are filed against almost 400 customers of the accused technology.  It is a waste of judicial and party resources to proceed with GeoTag's massive litigation campaign against peripheral parties in Texas, while a handful of real parties in interest—who design and implement the accused products and thus have the relevant documents and knowledge—proceed with simultaneous declaratory judgment actions in Delaware.  Regardless of outcome, the Delaware litigation will dispose of major premises being litigated in Texas and may even moot the Texas litigation entirely.  Such

---

[1]    *See* Appendix I for the full list of moving defendants.

economy is particularly important in light of GeoTag's strategy of simultaneously suing hundreds of customer defendants.[2]

Furthermore, the "customer suit exception" to the first-to-file rule is applicable to the facts of this case and provides that litigation against or brought by the manufacturer of infringing goods takes precedence over a suit by the patent owner against customers of the manufacturer. *Katz v. Lear Siegler, Inc.*, 909 F.2d 1459, 1464 (Fed. Cir. 1990).[3]   Accordingly, Movants submit that this Court should stay the present action in the interest of efficiency and judicial economy.

## PRELIMINARY STATEMENT

Plaintiff GeoTag, Inc. ("GeoTag") filed eight separate actions in the United States District Court for the Eastern District of Texas ("Eastern District of Texas") between December 17, 2010 and December 22, 2010.  GeoTag accuses 365 entities of infringing U.S. Patent No. 5,930,474 (the "'474 Patent") by providing various locator services on their company websites.

---

[2]   The need for efficiency is greater in patent infringement cases involving multiple defendants than in typical infringement cases.  In a recent order issued in *Parallel Networks LLC v. AEO, Inc., et al.*, Case No. 6:10-cv-474, Judge Davis noted the plaintiff's atypical strategy of suing 124 defendants across four actions with the goal of early settlement in a range that essentially amounts to litigation costs.  *See* Docket No. 338 (Mar. 15, 2011).  To efficiently resolve the cases, the Court departed from the standard docket control order and the Patent Rules and accelerated the hearing date for *Markman* and summary judgment on noninfringement.  *Id.; see also Whetstone Electronics v. Xerox*, Case No. 6:10-cv-278 (a similar request for an early *Markman* hearing granted by Judge Love on April 7, 2011).

[3]   To the extent that GeoTag opposes this Motion by strict adherence to the first-to-file rule, it bears noting that GeoTag itself will be in violation of this.  GeoTag filed its lawsuit against Where 2 Get It, Inc. and several of its customers (Case No. 2:11-cv-00175) in the Eastern District of Texas on March 15, 2011, one day after Where 2 Get It, Inc. filed a declaratory judgment action against GeoTag in Delaware.  The suit against Where 2 Get It, Inc. is joined in this Motion, and the Defendants request the Court to stay that suit as to the customers of Where 2 Get It, Inc. and transfer the rest to the District of Delaware.  As an alternative, the customers of Where 2 Get It, Inc. should likewise be entitled to assert a first-to-file argument to be included in the Provider's declaratory judgment suit.

On March 1, 2011, less than three months after GeoTag filed its original action, Microsoft Corp. ("Microsoft") and Google Inc. ("Google") jointly filed a declaratory judgment action against GeoTag, in the action entitled *Microsoft Corp. v. GeoTag, Inc.*, Case No. 1:11-cv-175, pending in the District of Delaware (Complaint attached as Exhibit A).   In this action, Microsoft and Google seek a declaration that the '474 Patent is invalid and is not infringed by the use of their web mapping services.   Shortly thereafter on March 14, 2011, Where 2 Get It, Inc. ("W2GI") filed a nearly identical declaratory judgment action against GeoTag in the District of Delaware, Case No. 1:11-cv-223 (Complaint attached as Exhibit B).   One day later, on March 15, 2011, GeoTag brought its ninth lawsuit in Texas against W2GI and several of its past and current customers.   It is likely that the Google, Microsoft, and W2GI actions (collectively, "Declaratory Judgment Actions") will proceed simultaneously in the District of Delaware.

Google, Microsoft, and W2GI (collectively, the "Delaware Plaintiffs") are all technology providers to customer Movants in the above-captioned actions.   Each provide web-mapping and location-based services (hereinafter, "Mapping Services").   For example, Microsoft provides Bing Maps, and Google provides Google Maps.   The Delaware Plaintiffs provide Mapping Services and license the Mapping Services to their customers for use in displaying the locations of the customer's retail stores or places of business.

The Movants are customers (and in some cases, customers of customers) of the Delaware Plaintiffs or other providers of Mapping Services (collectively, the "Providers").   Of the total number of defendants across the nine Texas actions, approximately 64% are customers of Microsoft, Google, and W2GI, and approximately 36% are clients of AOL MapQuest, Know-

Where Systems, or other Providers.[4]  To Movants' knowledge, their licensed Mapping Services operate in a similar manner, regardless of Provider, and therefore the Movants who are customers of the Delaware Plaintiffs and the Movants who are customers of other Providers should be treated the same for purposes of this Motion.  As customers, the Movants merely license and repackage the Mapping Services to fit their websites and likely do not have significant discoverable information beyond their Terms of Use Agreements.

The Providers, who host the Mapping Services and who alone control their design and production, are the real defendants in this patent infringement suit.  This fact is further evidenced by GeoTag's refusal to grant a covenant not to sue to the Providers' customers based on their use of Google or Bing Maps, in exchange for Microsoft and Google's offer to dismiss their Declaratory Judgment Suit.  Furthermore, the vast majority of discovery must be sought from the Providers.  In addition to the nearly 400 customer defendants in the above actions, it is important to note that the Providers have tens of thousands of other customers who use the Mapping Services in essentially the same way as the named defendants.  Unless these nine actions are stayed pending resolution of the Delaware litigations, the Court may see a deluge of similar, customer-targeting suits.[5]

A stay of these actions provides the Court with an opportunity to efficiently structure this patent infringement suit at its outset by limiting it to the real defendants at issue. Indeed, if the Delaware Plaintiffs prevail in the Declaratory Judgment Actions, GeoTag will likely have no

---

[4]   These percentages are calculated by the Movants by a survey of the websites named in the complaint.  To the Movants' knowledge, a very small minority of the Texas defendants use open-source code available on the internet or develop locator services in-house.  However, a finding of invalidity in Delaware will also moot GeoTag's claims against them.  The minority defendants do not oppose this motion.

[5]   GeoTag continues to name additional defendants, filing an Amended Complaint on May 16, 2011, to add additional parties in the most recent action, Case No. 2:11-cv-175.

further basis to proceed before this Court.  Thus, the interests of the minority who are not clients of the Delaware Plaintiffs are aligned with the interests of the majority in that a stay of the Texas litigation will promote efficiency and judicial economy.

## APPLICABLE LAW

A district court has the inherent power to control its own docket, including the power to stay proceedings.  *Soverain Software LLC v. Amazon.com, Inc.*, 356 F. Supp. 2d 660, 662 (E.D. Tex. 2005); *see also Landis v. N. Am. Co.*, 299 U.S. 248, 254, 57 S. Ct. 163, 81 L. Ed. 153 (1936) ("The power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.").  In determining whether the benefits of a stay outweigh the inherent costs, the district court generally considers: (1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party; (2) whether a stay will simplify the issues and trial of the case; (3) whether discovery is completed; and (4) whether a trial date has been set.  *Southwire Co. v. Cerro Wire, Inc.*, Case No. 6:09-CV-289, 2010 U.S. Dist. LEXIS 120951, at *6 (E.D. Tex. Nov. 10, 2010) (granting stay).

## ARGUMENT

GeoTag's nine Texas actions are in their earliest stages.  No scheduling conferences have been held and a trial date has not been set.  In fact, GeoTag continues to name additional defendants.  *See* Am. Compl., Case No. 2:11-cv-175 (May 16, 2011).  The benefits inherent in a stay of these actions are significant.  A stay in favor of the Declaratory Judgment Actions will greatly simplify the remaining issues in the Texas actions and will not prejudice or present a clear tactical disadvantage to GeoTag.  Rather, GeoTag will be afforded an opportunity to litigate this case against entities that have developed the accused products and who are in possession of

most, if not all, of the relevant discovery.   Proceeding in Texas based on little more than the "first-to-file" rule is not in the best interests of GeoTag, the defendants, or the Court.   Indeed, Federal Circuit precedent recognizes an exception to the first-to-file rule in cases such as these, where the manufacturer or supplier of an accused product is the real party in interest.

"The first-to-file rule is a rule of comity that states, where actions are filed in separate federal district courts with nearly identical parties and issues, the court in which the first suit was filed should typically proceed to judgment."   *Delphi Corp. v. Auto. Tech. Int'l, Inc.*, 2008 WL 2941116, at *4 (E.D. Mich. July 25, 2008) (citing *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1088 (6th Cir. 1996)).   Although the general rule favors the forum of the first-filed action, this rule is not absolute and should be applied with a degree of flexibility and common sense.   *Ultra Prod., Inc. v. Best Buy Co., Inc.*, 2009 WL 2843888 (D.N.J. Sept. 1, 2009) (staying an action filed against resellers in favor of resolving the action against manufacturers).   As a guiding case has noted, "[w]hile the first-filed rule may ordinarily be a prudent one, it is so only because it is sometimes more important that there be a rule than that the rule be particularly sound. Accordingly, an exception to the first-filed rule has developed in patent litigation where the earlier action is an infringement suit against a mere customer and the later suit is a declaratory judgment action brought by the manufacturer of the accused devices."   *Codex Corp. v. Milgo Elec. Corp.*, 553 F.2d 735, 737 (1st Cir. 1977).   Those are precisely the facts of the present situation.

The "customer suit exception" provides that litigation against or brought by the manufacturer of infringing goods takes precedence over a suit by the patent owner against customers of the manufacturer.   *Katz v. Lear Siegler, Inc.*, 909 F.2d 1459, 1464 (Fed. Cir. 1990) (affirmed action enjoining continuation of the customer suit pending resolution of the

manufacturer action).  This principle is premised on an understanding of who actually represents the real party in interest:

> At the root of the preference for a manufacturer's declaratory judgment action is the recognition that, in reality, the manufacturer is the true defendant in the customer suit . . . . .  It is a simple fact of life that a manufacturer must protect its customers, either as a matter of contract, or good business, or in order to avoid the damaging impact of an adverse ruling against its products.

*Id.* at 1464 (quoting *Codex Corp.*, 553 F.2d at 737-38); *see also, e.g., Kahn v. General Motors Corp.*, 889 F.2d 1078, 1081 (Fed. Cir. 1989) ("customer suit exception is based on the manufacturer's presumed greater interest in defending its actions against charges of patent infringement; and to guard against possibility of abuse").

The guiding principles in cases applying the customer suit exception are efficiency and judicial economy.  *Tegic Commc'ns Corp. v. Bd. Of Regents of the Univ. Of Tex. Sys.*, 458 F.3d 1335, 1343 (Fed. Cir. 2006).  In making a determination of efficiency, Federal Circuit precedent has articulated certain factors: (A) whether the customer-defendant in the earlier-filed case is merely a peripheral party; (B) whether the customer-defendant agrees to be bound by any decision in favor of the patent owner; and (C) whether the manufacturer is the only source of the infringing product.  *Id.*  Thus, if the factors are met and the manufacturer is determined to be the real party in interest, global settlement is preferred over piecemeal litigation as a matter of judicial economy.  *Delphi Corp. v. Auto. Tech. Int'l, Inc.*, 2008 WL 2941116 (E.D. Mich. July 25, 2008) (applying the customer suit exception to allow the manufacturer's declaratory judgment action to proceed).

### A.    Movants are Mere Peripheral Parties

Nearly all the Movants in this case are mere peripheral parties because they do nothing more than license and repackage web-based Mapping Services that are owned, operated, managed, and controlled by Providers.  In a similar case, the Court granted a manufacturer's

motion to stay in a software case that involved claims against Kodak for its Staccato® Product and Kodak's customers for licensing the Kodak Staccato® Products.  *Spread Spectrum Screening, LLC v. Eastman Kodak Co.*, 2010 WL 3516106, at *3 (N.D. Ill. Sept. 1, 2010) (finding that Kodak's customers add nothing to plaintiff's infringement action against Kodak, and Kodak's customers are merely "peripheral").  Analogous to the present facts, the defendants in *Eastman Kodak* merely licensed the software product from Kodak.  Thus, Kodak's customers "[had] nothing substantive to offer during plaintiff's action against Kodak and likely [did] not even understand how the product software actually works . . . . Consequently, they [were] merely peripheral to the litigation between plaintiff and Kodak."  *Id.*

By the same token, the majority of Movants here only repackage the Mapping Services provided to them.  The accused websites act as mere portals between the end-user (*i.e.*, an individual visiting a defendant's website over the Internet) and the provider of the Mapping Service, such as Google or Microsoft.  The search entered by the end-user is routed to the Providers' servers, which run the accused method and/or system and generate the results page that is returned to the end-user (see screenshot below). The list of store information and addresses are likewise generated from a database hosted on the Providers' servers.  *See* Kinnan Decl. in support of Microsoft and Google's Brief in Opposition to GeoTag's Motion to Dismiss at ¶ 5 (attached hereto as Exhibit C) ("Microsoft creates and hosts store locator-type applications for many of its customers . . . For those customers, all of the relevant data and functionality for the store locator resides on the Microsoft server."); *see also* Cuesta Decl. in support of Microsoft and Google's Brief in Opposition to GeoTag's Motion to Dismiss at ¶ 2 (attached hereto as Exhibit D) ("Google provides web-based mapping services and application programming interfaces ("APIs") that allow customers to add interactive mapping features to their websites.").



As further support and as shown in the screenshot above, in the case of Google's Mapping Services, the results page displayed to the end-user states that the Mapping Service is "powered by Google" and contains Google's own "Terms of Use" (attached hereto as Exhibit E). Google's Terms of Use is an agreement between Google and the end user for access to the Google Maps service. Subway, in this example, is not mentioned in Google's Terms of Use. Accordingly, the Subway Restaurants' locator website acts as a mere portal in a transaction between Google and the end user.

The peripheral nature of the Movants involvement in the transaction between the Providers and the end user is further evidenced by Microsoft and Google's brief filed in opposition to GeoTag's motion to dismiss the Declaratory Judgment Action[6] (attached hereto as Exhibit F) and accompanying declarations of Google employee Carlos Cuesta, and Microsoft employee Keith Kinnan. *See* Exhibit F at 6-7 ("As discussed in the declarations of Keith Kinnan and Carlos Cuesta, Plaintiffs' software and servers can contain the data and functionality for

---

[6] *Microsoft Corp. v. GeoTag, Inc.*, Case No. 1:11-cv-175, (D. Del) (Dkt. 11).

such store locators . . . [for example,] Microsoft hosts the mapping services on its servers, and in every instance provides certain geographical information—such as longitude and latitude—to the Bing Maps customer—such information also being resident on Microsoft's servers . . . [and] Google provides analogous software and services.").  As further evidence of the integral nature of the Provider's Mapping Services to GeoTag's infringement action, when Microsoft and Google offered to dismiss their case against GeoTag, if it would covenant not to accuse their customers of infringement *based on their use of Google Maps or Bing Maps*, GeoTag refused to do so.  *See id*. at 7-8.

Since the accused websites merely repackage Mapping Services, the Movants likely have little to no documentation relevant to the alleged infringement in their possession.  Instead, the bulk—if not all—of the documents regarding the operation of the accused websites are located at the Providers' headquarters.  Therefore, Movants are merely peripheral parties to the true litigation between GeoTag and the Providers of the Mapping Services.

Plaintiffs are not prejudiced by proceeding with litigation against the Providers first.  This is not a case where the manufacturer's software makes up only part of the infringing device and direct infringement must be established as to the customers before plaintiff may pursue a claim for indirect infringement against the manufacturers.  *See webMethods, Inc. v. iWork Software, LLC*, 2003 WL 1908019 (N.D. Ill. April 21, 2003); *iWork Software, LLC v. Corporate Express, Inc.*, 2003 WL 22494851 (N.D. Ill. Nov. 4, 2003) (infringement by webMethod's software was not at issue, only the software's subsequent use by others).  In those circumstances, the customers are not mere peripheral parties and the manufacturer's case cannot go first, because direct infringement must be established before indirect infringement can be found.  *Microsoft Corp. v. Commonwealth Scientific and Indus. Research Organisation*, 2007 WL 4376104, at *3

(E.D. Tex. Dec. 13, 2007) (the customer suit exception is inapplicable where the manufacturer only makes a component of the end product).

Here, however, the Mapping Services comprise the whole of Movants' store locater services, not a mere component.  The Mapping Services are thus indistinguishable from Movants' store locater services and allegedly infringe only to the extent that Movants' services may infringe.[7]  Accordingly, Movants are passive portals to the Providers' Mapping Services and are merely peripheral to the litigation.

### B.      The Manufacturer Suit Would Resolve the Major Issues

If the stay is granted, Movants will agree to be bound by the final determination of validity or invalidity in the pending Declaratory Judgment Action.  *See Shifferaw v. Emson USA, 2010 U.S. Dist. LEXIS 25612 at \*10 (E.D. Tex. Mar. 18, 2010) (Everingham, J.)* (the fact that the defendants will stipulate that they will be bound ***weighs heavily*** towards a finding that adjudication of the claims against the manufacturer would likely dispose of the rest of the case).  However, even if Movants did not agree to be so bound, the Federal Circuit has nonetheless affirmed the district court's decision to enjoin a case based solely on considerations of efficiency.  *Card Activation Tech. v. Pier 1 Imports, Inc.*, 2009 WL 2956926, at \*3-4 (N.D. Ill. Sept. 14, 2009) (citing *Katz*, 909 F.3d at 1464) (granting stay because "it is less than efficient and economical to force CAT [plaintiff] and SVS [manufacturer] to litigate against each other in two jurisdictions when one of the pending cases has at least an even chance of resolving both lawsuits at once").

Staying the present actions will maximize judicial efficiency because resolution of the manufacturer's suits will dispose of the major issues as to all or a majority of the defendants

---

[7]     Movants reserve a joint infringement argument to the extent that GeoTag asserts that Movants' products or services meet any "user computer" or "network" element of the asserted claims.

whether they are Movants to this action or not.   In fact, either way the Declaratory Judgment Actions conclude, all or major portions of this litigation will be resolved.   If the Delaware Plaintiffs are successful, all nine Texas actions may be rendered moot.   (For example, a finding of patent invalidity would obviate any further litigation of the patent; a finding of non-infringement would resolve the claims against at least the Delaware Plaintiffs' customers and potentially all defendants regardless of Provider.)   And even if the Delaware Plaintiffs are found to infringe, that outcome will still exhaust the claims against 64% of the Texas defendants, because GeoTag cannot receive a double recovery for the same act of infringement by manufacturer and customer.[8]   Any damages awarded for Microsoft, Google, or W2GI's use of the accused products will therefore preclude additional recovery from their customers.   *See Shifferaw*, 2010 U.S. Dist. LEXIS 25612 at *10 (plaintiff cannot receive a double recovery from both the manufacturer and the retailers).   Accordingly, resolution of the manufacturer's suit will dispose of major issues for many Movants and non-Movants alike in the nine pending cases currently before this Court.[9]

Further, the Federal Circuit recognizes that it is not necessary for the second action to resolve *all charges* against the customers in the stayed suit.   The customer suit should be stayed if the manufacturer's case can promise to resolve the "major issues" concerning the claims against the customer, though not every conceivable issue.   *Katz*, 909 F.2d at 1464 ("Although

---

[8]   *LG Elec., Inc. v. Asustek Computers*, 126 F. Supp. 2d 414, 422 (E.D. Va. 2000) ("If the court does find them liable, and allows LGE to collect royalties from Asustek and Asus, LGE cannot then in turn collect royalties from the entity to whom the infringer sells the product . . . .   On the other hand, if the court holds that Asustek and Asus did not infringe LGE's patent, LGE has no case against CBM for reselling such products.").

[9]   Although a resolution of the Declaratory Judgment Actions will not decide infringement as to the 36% of the defendants who are not customers of the Delaware Plaintiffs, those defendants do not oppose staying the Texas actions pending resolution in the Delaware court.   Further, all the defendants appreciate the dispositive impact of a finding of invalidity in Delaware, and the potential effect a finding of non-infringement would have on all defendants.

there may be *additional issues* involving the defendants in the [first] action, their prosecution will be advanced if Mr. Katz is successful on the major premises being litigated in Massachusetts, and may well be mooted if he is unsuccessful."); *see also, e.g.*, *Am. Acad. of Sci. v. Novell Inc.*, 1992 WL 313101, at *2-3 (N.D. Cal. July 9, 1992).  Resolution of the Declaratory Judgment Actions brought by the Delaware Plaintiffs would resolve the major issues of patent validity, patent enforceability, and construction.  Accordingly, "when a decision on the merits of an action between the manufacturer and the patent holder will resolve the major issues as to the manufacturer's customers, the decision to give priority to the manufacturer's action is proper." *Am. Acad. Of Sci.*, 1992 WL 313101, at *2.

Movants respectfully submit that a stay of the Texas actions in favor of the Declaratory Judgment Actions would resolve many, and potentially all, of the major issues regarding GeoTag's allegations against them.

### C.     Staying These Cases Will Promote Judicial Economy and Will Not Prejudice GeoTag

As manufacturers, suppliers, and hosts of Mapping Services, the Delaware Plaintiffs are the source of the majority of the Movants' allegedly infringing products and are the real parties in interest to GeoTag's patent infringement suit.[10]  The manufacturers control the design and production of the Mapping Services and are therefore in the best position to defend their own products.  Presumptively, the manufacturers have a great interest in defending their products against charges of patent infringement and to guard against the possibility of abuse.  *See Kahn*, 889 F.2d at 1081.

---

[10]   Again, some of the Movants are not customers of Microsoft, Google, and W2GI.  However, the other Providers, such as AOL MapQuest and Know-Where Systems, are akin to Microsoft and Google as the manufacturers of the infringing product or service and are the real parties in interest.  Thus, resolution of the Delaware case will effectively promote efficiency and conserve judicial resources without prejudice to GeoTag, irrespective of whether 100% of the Movants are customers of parties in the Declaratory Judgment Actions.

Moreover, a temporary stay of the current action will not prejudice GeoTag because no trial date has been set, no discovery has occurred, and none of the above actions have yet been assigned scheduling conferences.  In fact, the Declaratory Judgment Actions were filed within three months of the original suit.  *Compare Microsoft*, 2007 WL 4376104, at *3 (Marvell waited two years before moving to stay, so "[s]itting on the sidelines for two years does not promote efficiency or judicial economy; this fact alone weighs heavily against granting the partial stay."). And, as previously stated, a stay will resolve major issues of validity, enforceability, and construction of the asserted patent and will simplify the matters for trial.[11]  Finally, GeoTag will also benefit from this request because staying these cases will allow GeoTag the opportunity to devote resources to the Delaware case that would otherwise go to simultaneously litigating nine cases at once.  *See, e.g., Card Activation Tech.*, 2009 WL 2956926, at *4.  Moreover, as previously noted, the lion's share of relevant discovery in this case will be in the possession of the Providers.  GeoTag will thus be free to pursue discovery from Microsoft, Google, and W2GI in Delaware, rather than engage in expensive third-party discovery here in Texas.

"Allowing the manufacturer's action to proceed in this manner comports with the Supreme Court's mandate that determinations of priority between manufacturer and customer suits should be made with an eye toward 'wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation . . . .'"  *Am. Acad. of Sci.*, 1992 WL 313101, at *2 (quoting *Kerotest Mfg. Co. v. c-0-Two Co.*, 342 U.S. 180, 185-86 (1952)).  Therefore, the customer suit exception applies and the motion to stay should be granted pending the disposition of the Declaratory Judgment Actions.

---

[11]   The claim construction order, D.E. 110, in *Geomas (International) Ltd, et al. v. Idearc*, Case No. 2:06-cv-475 (E.D. Tex.) is not a reason to keeping these actions pending in Texas.  The accused products in *Geomas* and the cases here could not be more disparate and, at this early stage, it is unknown whether the same claims will be at issue.

**CONCLUSION**

For the reasons discussed herein, Movants respectfully request that the Court stay the present actions pending resolution of the validity and infringement issues that are being litigated in the District of Delaware.

Dated: June 17, 2011               Respectfully submitted,

*/s/ Neil J. McNabnay*
Neil J. McNabnay
Texas Bar No. 24002583
njm@fr.com
Michael A. Bittner
Texas Bar No. 24064905
mrb@fr.com
Jane J. Du
Virginia Bar No. 78449
jjd@fr.com
FISH & RICHARDSON P.C.
1717 Main Street, Suite 5000
Dallas, Texas 75201
(214) 747-5070 - Telephone
(214) 747-2091 - Facsimile

COUNSEL FOR DEFENDANTS
ASICS AMERICA CORP.; AVIS BUDGET GROUP,
INC.; AVIS RENT A CAR SYSTEM, LLC; BEST
MAID PRODUCTS, INC.; BJ'S WHOLESALE CLUB,
INC.; THE BOEING COMPANY; BURGER KING
CORP.; CABELA'S, INC.; CHANEL, INC.; DOCTOR'S
ASSOCIATES, INC. d/b/a SUBWAY; DOLLAR RENT
A CAR, INC.; DOLLAR THRIFTY AUTOMOTIVE
GROUP, INC.; DOLLAR TREE, INC.; INTERSTATE
BATTERY SYSTEMS OF AMERICA, INC.; JACK IN
THE BOX, INC.; KOHLER CO.; KUBOTA TRACTOR
CORP.; LIVE NATION WORLDWIDE, INC.; LOWE'S
HOME CENTERS, INC.; PIP, INC. d/b/a PIP
PRINTING AND MARKETING SERVICES; POLO
RALPH LAUREN CORP.; RADIO SHACK CORP.;
RALPH LAUREN MEDIA, LLC; RICHEMONT
NORTH AMERICA, INC. d/b/a CARTIER;
SOUTHERN STATES COOPERATIVE; STERLING
JEWELERS, INC. d/b/a JARED THE GALLERIA OF
JEWELRY d/b/a KAY JEWELERS; TICKETMASTER
L.L.C.; TIFFANY & CO. d/b/a TIFFANY &
COMPANY; THRIFTY, INC.; VAN CLEEF & ARPELS,
INC.; WINN-DIXIE STORES, INC.

*/s/ Matias Ferrario*
Matias Ferrario
NC Bar No. 38723
mferrario@kilpatricktownsend.com
KILPATRICK TOWNSEND & STOCKTON LLP
1001 West Fourth Street
Winston-Salem, NC 27101-2400
Telephone:  336.607.7300
Facsimile:  336.607.7500

Michael E. Jones
State Bar No. 10929400
mikejones@potterminton.com
Allen F. Gardner
State Bar No. 24043679
allengardner@potterminton.com
POTTER MINTON
A Professional Corporation
110 N. College, Suite 500 (75702)
P. O. Box 359
Tyler, TX 75710
Telephone: 903.597.8311
Facsimile: 903.593.0846

**ATTORNEYS FOR DEFENDANT AGCO CORP.**

*/s/ Brian C. McCormack*

Mark D. Taylor
Texas Bar No. 19713250
mark.taylor@bakermckenzie.com
Brian C. McCormack
Texas Bar No. 00797036
brian.mccormack@bakermckenzie.com
Nathan A. Engels
Texas Bar No. 24036526
nathan.engels@bakermckenzie.com
BAKER & MCKENZIE LLP
2300 Trammell Crow Center
2001 Ross Avenue
Dallas, TX  75201
Tel. (214) 978-3000
Fax (214) 978-3099

**COUNSEL FOR DEFENDANTS
ALBERTSON'S, LLC; ALBERTSON'S, INC.;
AROMATIQUE, INC.; AS AMERICA, INC.;
BOB EVANS FARMS, INC.; BOB EVANS
RESTAURANTS OF MICHIGAN, LLC; CEC
ENTERTAINMENT, INC.; CEC
ENTERTAINMENT CONCEPTS, L.P.;
ILITCH HOLDINGS, INC.; LITTLE CAESAR
ENTERPRISES, INC.; and PIGGLY WIGGLY,
LLC**

*/s/ Trey Yarbrough*
Trey Yarbrough
Bar No. 22133500
Debby E. Gunter
Bar No. 24012752
YARBROUGH ♦ WILCOX, PLLC
100 E. Ferguson St., Ste. 1015
Tyler, TX 75702
Telephone: (903) 595-3111
Facsimile: (903) 595-0191
trey@yw-lawfirm.com
debby@yw-lawfirm.com

Anthony F. Lo Cicero
Richard S. Mandaro
Benjamin Charkow
AMSTER ROTHSTEIN & EBENSTEIN LLP
90 Park Avenue
New York, NY 10016
Telephone: (212) 336-8000
Facsimile: (212) 336-8001
DineEq-GTag@arelaw.com

**ATTORNEYS FOR DEFENDANTS
APPLEBEE'S INTERNATIONAL, INC. AND
APPLEBEE'S IP, LLC**

*/s/ Robert M. Fuhrer*
George M. Sirilla (admitted pro hac vice)
Jack S. Barufka (admitted pro hac vice)
Robert M. Fuhrer (admitted pro hac vice)
PILLSBURY WINTHROP SHAW PITTMAN LLP
1650 Tysons Blvd., 14th Floor
McLean, VA 22102
703.770.7900 – Telephone
703.770.7901 – Facsimile

**ATTORNEYS FOR DEFENDANTS BASS PRO, INC.,
BPS DIRECT, L.L.C., AND BASS PRO OUTDOORS
ONLINE, L.L.C.**

*/s/ Martin B. Pavane*
Martin B. Pavane
New York Bar No. 1528819
mpavane@cplplaw.com
COHEN PONTANI LIEBERMAN & PAVANE
LLP
551 Fifth Avenue, Suite 1210
New York, New York 10176
(212) 687-2770 (Telephone)
(212) 972-5487 (Telecopy)

**ATTORNEYS FOR DEFENDANT BEECH NUT
NUTRITION CORP.**


*/s/ Robert W. Kantner*
ANDREW VALENTINE
California Bar No. 162094
ERIK R. FUEHRER
California Bar No. 252578
DLA PIPER LLP (US)
2000 University Avenue
East Palo Alto, CA  94303-2214
Phone: 650.833.2000
Fax: 650.833.2001

ROBERT W. KANTNER
Texas Bar No. 11093900
DLA PIPER LLP (US)
1717 Main Street, Suite 4600
Dallas, TX  75201-4629
Phone:  214.743.4500
Fax: 214-743-4545

**ATTORNEYS FOR DEFENDANT BURT'S
BEES, INC.**

*/s/ Elizabeth L. DeRieux*
Elizabeth L. DeRieux
ederieux@capshawlaw.com
CAPSHAW DERIEUX, LLP
114 E. Commerce Ave.
Gladewater, Texas  75647
(903) 236-9800
(903) 236-8787

H. Jonathan Redway, Lead Attorney
jredway@dickinsonwright.com
Nicole M. Meyer (Pro Hac Vice)
nmeyer@dickinsonwright.com
DICKINSON WRIGHT PLLC
1875 I Street, NW, Suite 1200
Washington, DC 20006
Phone: (202) 457-0160
Fax: (202) 659-1559

**ATTORNEYS FOR DEFENDANT CARHARTT INC.**

*/s/ J. Thad Heartfield*
J. Thad Heartfield (Texas Bar No. 09346800)
M. Dru Montgomery (Texas Bar No. 24010800)
THE HEARTFIELD LAW FIRM
2195 Dowlen Road
Beaumont, Texas 77706
Phone: 409.866.3318
Fax: 409.866.5789
E-mail: thad@jth-law.com
E-mail: dru@jth-law.com

David M. Stein (Texas Bar No. 00797494)
McDERMOTT WILL & EMERY LLP
18191 Von Karman Avenue, Suite 500
Irvine, CA 92612.7108
Phone: 949.851.0633
Fax: 949.851.9348
E-mail: dstein@mwe.com

**ATTORNEYS FOR DEFENDANTS CONN'S, INC. AND DELI MANAGEMENT, INC. D/B/A JASON'S DELI**

*/s/ Deron R. Dacus*
Deron R. Dacus
Texas Bar No. 00790553
derond@rameyflock.com
Ramey & Flock, P.C.
100 E. Ferguson, Suite 500
Tyler, Texas  75702
Phone:  (903) 597-3301
Fax:  (903) 597-2413

**COUNSEL FOR DEFENDANT CRACKER BARREL OLD COUNTRY STORE d/b/a CRACKER BARREL**


*/s/ Avelyn M. Ross*
Willem G. Schuurman (TX Bar No. 17855200)
Avelyn M. Ross (TX Bar No. 24027871)
VINSON & ELKINS L.L.P.
2801 Via Fortuna, Suite 100
Austin, Texas 78746-7568
Tel: (512) 542-8400
Fax: (512) 236-3218
bschuurman@velaw.com
aross@velaw.com

Scott W. Breedlove (TX Bar No. 00790361)
Srinivas G. Pathmanaban (TX Bar No. 24074865)
VINSON & ELKINS LLP
Trammell Crow Center
2001 Ross Avenue, Suite 3700
Dallas, Texas 75201-2975
Tel:  (214) 220-7700
Fax: (214) 999-7993
sbreedlove@velaw.com
gpathmanaban@velaw.com

**ATTORNEYS FOR CHRISTIAN DIOR PERFUMES, LLC**

*/s/ Robert W. Kantner*
Robert W. Kantner
Texas State Bar No. 11093900
DLA Piper LLP (US)
1717 Main Street, Suite 4600
Dallas, Texas 75201
Telephone:  214-743-4544
Facsimile:  972-813-6256

**ATTORNEY FOR CINNABON, INC., MOE'S
FRANCHISOR, LLC AND SCHLOTZSKY'S
FRANCHISOR, LLC**


*/s/ Anthony F. Lo Cicero*
Anthony F. Lo Cicero
Richard S. Mandaro
Benjamin Charkow
AMSTER ROTHSTEIN & EBENSTEIN LLP
90 Park Avenue
New York, NY 10016
Telephone: (212) 336-8000
Facsimile: (212) 336-8001
DineEq-GTag@arelaw.com

**ATTORNEYS FOR DEFENDANTS
IHOP IP, LLC AND DINEEQUITY, INC.**

*/s/ Maralee MacDonald*
Boutin Jones Inc.
Maralee MacDonald
Admitted Pro Hac Vice
California Bar No. 208699
mmacdonald@boutinjones.com
Chris Gibson
Admitted Pro Hac Vice
California Bar No. 073353
cgibson@boutinjones.com
555 Capitol Mall, Suite 1500
Sacramento, CA  95814

McGinnis, Lochridge & Kilgore, LLP
Travis C. Barton
Texas Bar No. 00790276
tcbarton@mcginnislaw.com
600 Congress, Suite 2100
Austin, TX  78701

Findlay Craft, LLP
R. Brian Craft
Texas Bar No. 04972020
bcraft@findlaycraft.com
Eric Findlay
Texas Bar No. 00789886
efindlay@findlaycraft.com
6760 Old Jacksonville Highway, Suite 101
Tyler, TX  75703

**ATTORNEYS FOR DEFENDANT
JELLY BELLY CANDY COMPANY**

*/s/ Robert J. Lenihan, II*
Robert J. Lenihan, II (*pro hac vice*)
Brent G. Seitz (*pro hac vice*)
Harness, Dickey & Pierce, P.L.C.
5445 Corporate Drive, Suite 200
Troy, MI 48098
(248) 641-1600
rjlenihan@hdp.com
bseitz@hdp.com

Michael C. Smith (TX Bar #18650410)
Siebman, Burg, Phillips & Smith, LLP
P.O. Box 1556
113 E. Austin Street
Marshall, TX 75671-1556
(903) 938-8900
michaelsmith@siebman.com

**ATTORNEYS FOR
LA-Z-BOY INCORPORATED**

*/s/ Matias Ferrario*
Matias Ferrario
NC Bar No. 38723
mferrario@kilpatricktownsend.com
KILPATRICK TOWNSEND & STOCKTON LLP
1001 West Fourth Street
Winston-Salem, NC 27101-2400
Telephone:  336.607.7300
Facsimile:  336.607.7500

Michael E. Jones
State Bar No. 10929400
mikejones@potterminton.com
Allen F. Gardner
State Bar No. 24043679
allengardner@potterminton.com
POTTER MINTON
A Professional Corporation
110 N. College, Suite 500
P. O. Box 359
Tyler, TX 75702
Telephone: 903.597.8311
Facsimile: 903.593.0846

**ATTORNEYS FOR DEFENDANTS LABORATORY CORPORATION OF AMERICA HOLDINGS AND LABORATORY CORPORATION OF AMERICA**

*/s/ Trey Yarbrough*
Trey Yarbrough
Bar No. 22133500
Debby E. Gunter
Bar No. 24012752
YARBROUGH ♦ WILCOX, PLLC
100 E. Ferguson St., Ste. 1015
Tyler, TX 75702
Telephone: (903) 595-3111
Facsimile: (903) 595-0191
trey@yw-lawfirm.com
debby@yw-lawfirm.com

Anthony F. Lo Cicero
Richard S. Mandaro
Benjamin Charkow
AMSTER ROTHSTEIN & EBENSTEIN LLP
90 Park Avenue
New York, NY 10016
Telephone: (212) 336-8000
Facsimile: (212) 336-8001

**ATTORNEYS FOR DEFENDANT**
**MACY'S RETAIL HOLDINGS, INC.**
**SUED ERRONEOUSLY AS MACY'S, INC.**

*/s/ Dru Montgomery*
Dru Montgomery
Texas State Bar No. 24010800
J. Thad Heartfield
Texas Bar No. 09346800
THE HEARTFIELD LAW FIRM
2195 Dowlen Road
Beaumont, Texas 77706
Telephone: (409) 866-3318
Fax: (409) 866-5789
dru@jth-law.com
thad@jth-law.com

OF COUNSEL:
Guy A. Reiss (*pro hac vice*)
Henry J. Cittone (*pro hac vice*)
REISS+PREUSS LLP
1350 Avenue of the Americas, Suite 2900
New York, NY 10019
(646) 731-2770

**ATTORNEYS FOR DEFENDANT**
**MIELE INCORPORATED**


*/s/ Margaret Elizabeth Day*
Margaret Elizabeth Day (CA Bar No. 177125)
(*pro hac vice*)
eday@feinday.com
FEINBERG DAY ALBERTI & THOMPSON LLP
401 Florence Street, Suite 201
Palo Alto, CA 94301
Telephone: (650) 618-4360
Facsimile: (650) 618-4368

**ATTORNEYS FOR**
**DEFENDANT/COUNTERCLAIMANT**
**MONSTER CABLE PRODUCTS, INC.**

*/s/ Gregory F. Ahrens*
Gregory F. Ahrens
Ohio State Bar No. 0038627
(Admitted in the ED TX)
gahrens@whepatent.com
Wood, Herron & Evans, L.L.P.
441 Vine Street, 2700 Carew Tower
Cincinnati, OH 45202
Tel: (513) 241-2324
Fax: (513) 241-6234

**ATTORNEY FOR DEFENDANT
NATIONAL INTERLOCK SYSTEMS, INC.**


*/s/ Michael J. Harris*
Christopher J. Renk (Lead Attorney)
IL Bar No. 6199012
crenk@bannerwitcoff.com
Thomas K. Pratt
IL Bar No. 6209761
tpratt@bannerwitcoff.com
Michael J. Harris
IL Bar No. 6280168
mharris@bannerwitcoff.com
Banner & Witcoff, LTD.
10 S. Wacker Drive, Ste. 3000
Chicago, IL 60606
Tel: (312) 463-5000
Fax: (312) 463-5001

**ATTORNEYS FOR DEFENDANT, NIKE, INC.**

*/s/ Michael C. Barrett*

FULBRIGHT & JAWORSKI LLP
Michael A. Swartzendruber
State Bar No. 19557702
2200 Ross Avenue, Suite 2800
Dallas, TX 75201
Tel: 214.855.8000
Fax: 214.855.8200
mswartzendruber@fulbright.com

Michael C. Barrett
State Bar No. 24006803
Sarah R. Holland
State Bar No. 24055679
600 Congress Avenue, Suite 2400
Austin, TX 78701
Tel: 512.474.5201
Fax: 512.536.4598
mbarrett@fulbright.com
sholland@fulbright.com

**COUNSEL FOR OFFICE DEPOT, INC.**

*/s/ Brian W. LaCorte*

Brian W. LaCorte (AZ Bar No. 012237)
BALLARD SPAHR LLP
1 East Washington Street, Suite 2300
Phoenix, Arizona 85004
Telephone: (602) 798-5400
Fax: (602) 798-5595
lacorteb@ballardspahr.com

William Cornelius (TX Bar No. 04834700)
WILSON, ROBERTSON & CORNELIUS, P.C.
P.O. Box 7339
Tyler, Texas 75711-7339
Telephone: (903) 509-5000
Facsimile: (903) 509-5091
wc@wilsonlawfirm.com

**ATTORNEYS FOR DEFENDANT THE REINALT-THOMAS CORPORATION**

*/s/ Jeremy S. Snodgrass*
J. Thad Heartfield
Texas Bar No. 09346800
M. Dru Montgomery
Texas Bar No. 24010800
THE HEARTFIELD LAW FIRM
2195 Dowlen Road
Beaumont, Texas 77706
Telephone: (409) 866-3318
Fax: (409) 866-5789
thad@jth-law.com
dru@jth-law.com

Of counsel:
Ralph J. Gabric
Tadashi Horie
Rickard K. DeMille
Jeremy S. Snodgrass
BRINKS HOFER GILSON & LIONE
NBC Tower, Suite 3600
455 North Cityfront Plaza Drive
Chicago, IL 60611-5599
(312) 321-4200 (telephone)
(312) 321-4299 (facsimile)

**ATTORNEYS FOR DEFENDANTS**
**SEIKO CORPORATION OF AMERICA,**
**SEIKO INSTRUMENTS INC., AND**
**SEIKO WATCH CORP.**

*/s/ Dwayne L. Mason*

Dwayne L. Mason
Email:  masondl@gtlaw.com
Mary-Olga Lovett
Email:  lovettm@gtlaw.com
Tara M. Williams
Email:  williamsta@gtlaw.com
Greenberg Traurig - Houston
1000 Louisiana
Suite 1700
Houston, TX 77002
713/374-3500
Fax: 713/374-3505

Scott J. Borenstein
Email:  borensteins@gtlaw.com
Justin MacLean
Email: macleanj@gtlaw.com
Greenberg Traurig - New York
Metlife Building
200 Park Avenue, 15th Floor
New York, NY 10166
212-801-9200
Fax: 212-801-6400
PRO HAC VICE

**ATTORNEYS FOR SKECHERS USA INC.**

*/s/ R. Kyle Hawes*

CHAMBERLAIN, HRDLICKA, WHITE,
WILLIAMS & MARTIN, P.C.
R. Kyle Hawes
kyle.hawes@chamberlainlaw.com
SBN: 00796725
1200 Smith Street, Suite 1400
Houston, Texas 77002
Telephone: 713-658-1818
Facsimile: 713-658-2553

GREENSFELDER, HEMKER & GALE, P.C.
Mary Ann L. Wymore
mlw@greensfelder.com
(Pro Hac Vice)
Eugene P. Schmittgens, Jr.
eps@greensfelder.com
(Pro Hac Vice)
10 South Broadway, Suite 2000
St. Louis, Missouri 63102
Telephone: 314-241-9090
Facsimile: 314-345-5499

**ATTORNEYS FOR DEFENDANTS THE
SWAN CORPORATION AND JIM'S FORMAL
WEAR COMPANY**

*/s/ Matias Ferrario*
Matias Ferrario
NC Bar No. 38723
mferrario@kilpatricktownsend.com
KILPATRICK TOWNSEND & STOCKTON LLP
1001 West Fourth Street
Winston-Salem, NC 27101-2400
Telephone:  336.607.7300
Facsimile:  336.607.7500

Geoffrey Gavin
ggavin@kilpatricktownsend.com
KILPATRICK TOWNSEND & STOCKTON LLP
Suite 2800
1100 Peachtree Street
Atlanta, GA 30309-4528
Telephone:  404.815.6500
Facsimile:  404.815.6555

**ATTORNEYS FOR DEFENDANT THE ROCKPORT COMPANY, LLC**

*/s/ Michael E. Schonberg*
Bruce S. Sostek
   State Bar No. 18855700
   Bruce.Sostek@tklaw.com
Michael E. Schonberg
   State Bar No. 00784927
   Mike.Schonberg@tklaw.com
Vishal Patel
   State Bar No. 24065885
   Vishal.Patel@tkalw.com
THOMPSON & KNIGHT LLP
One Arts Plaza
1722 Routh St., Suite 1500
Dallas, Texas 75201
214.969.1700
214.969.1751 (Fax)

**ATTORNEYS FOR DEFENDANTS
VF OUTDOOR, INC. D/B/A THE NORTH
FACE; AND SEVEN FOR ALL MANKIND,
LLC. D/B/A 7FAM**

*/s/ Matias Ferrario*
Matias Ferrario
NC Bar No. 38723
mferrario@kilpatricktownsend.com
KILPATRICK TOWNSEND & STOCKTON LLP
1001 West Fourth Street
Winston-Salem, NC 27101-2400
Telephone:  336.607.7300
Facsimile:  336.607.7500

**ATTORNEY FOR DEFENDANT VICTORINOX SWISS ARMY, INC.**


*/s/Clayton C. James*
Clayton C. James
Srecko Vidmar
HOGAN LOVELLS LLP
One Tabor Center, Suite 1500
1200 Seventeenth Street
Denver, CO 80202
(303) 899-7300 (phone)
(303) 899-7333 (fax)
clay.james@hoganlovells.com
lucky.vidmar@hoganlovells.com

**ATTORNEYS FOR DEFENDANTS THE WESTERN UNION COMPANY AND WESTERN UNION HOLDINGS, INC.**

*/s/ Scott Stevens*
Scott Stevens
State Bar No. 00792024
STEVENS LOVE
P.O. Box 3427
Longview, Texas 75606
Telephone: 903-753-6760
Facsimile: 903-753-6761
scott@stevenslove.com

Daniel J. Schwartz
SEYFARTH SHAW LLP
131 S. Dearborn Street - Suite 2400
Chicago, Illinois 60603
Telephone: (312) 460-5000
Facsimile: (312) 460-7000
dschwartz@seyfarth.com

**ATTORNEYS FOR WHERE2GETIT, INC.**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on June 17, 2011, to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Local Rule CV-5(a)(3).

*/s/Michael A. Bittner*
Michael A. Bittner

## CERTIFICATE OF CONFERENCE

The undersigned hereby certifies that counsel has complied with the meet and confer requirement of Local Rule CV-7(h) and that the motion is opposed.  Counsel for both parties discussed the issues presented here by teleconference and electronic mail on June 15-16, 2011.  No agreement could be reached.  Discussions have conclusively ended in an impasse, leaving an open issue for the Court to resolve.

*/s/Michael A. Bittner*
Michael A. Bittner